**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

David E. Jutras

   v.       Civil No. 09-cv-151-PB

Dorothy E. Graham

**REPORT AND RECOMMENDATION**

Before the Court is David Jutras' complaint, filed pursuant to 42 U.S.C. § 1983 (document nos. 1 & 4).[1]  The matter is before me for preliminary review to determine, among other things, whether the complaint states any claim upon which relief might be granted.  See 28 U.S.C. § 1915A(a); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2) (authorizing magistrate judge to preliminarily review pro se prisoner filings pursuant to 28 U.S.C. § 1915A).

### Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff or petitioner commences an action pro se and in forma pauperis, the

---

[1] Jutras filed a complaint (document no. 1) and a lengthy addendum to his complaint (document no. 4).  The addendum will be accepted as, and considered to be, part of the complaint for all purposes.  See Fed. R. Civ. P. 10(c) (written instrument addended to a pleading is a part of the pleading for all purposes).

magistrate judge conducts a preliminary review. In a preliminary review, pro se pleadings are construed liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals). The court must accept as true the plaintiff's factual assertions, see Erickson, 551 U.S. at 94, and any inferences reasonably drawn therefrom. See Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005); Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990). This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background[2]

In April 2000, David Jutras was indicted on six counts of aggravated felonious sexual assault (Super. Ct. docket nos. 00-800 through 00-805) which alleged that he had sexually molested a child, his stepdaughter. After consultation with his attorney, Jutras decided to enter a guilty plea in exchange for a negotiated disposition. On June 13, 2000, Jutras and his attorney signed a form entitled "Notice of Intention to Enter Plea of Guilty" which was filed with the New Hampshire Superior Court. Above Jutras' signature, the form, which Jutras submitted as part of his petition, states that on one of the charges against him (Super. Ct. docket no. 00-800), Jutras agreed to plead guilty and receive a committed sentence of 4-20 years in the New Hampshire State Prison, and that on two of the charges against him (Super. Ct. docket nos. 00-803 and 00-804), he agreed to plead guilty and receive a 10-20 year suspended sentence on each charge. These 10-20 year sentences were to be imposed consecutive to his stand committed sentence and concurrent to one another, and were to be suspended for a period of ten years from

---

[2]The claims, as identified herein, will be considered to be the claims raised in this action for all purposes. If Jutras disagrees with the claims as identified, he must do so by properly objecting to this Report and Recommendation.

3

the date of his plea.  See Addendum to Cmplt. (1 of 3) p. 122-23 (Notice of Intention to Enter Plea of Guilty).

On September 6, 2000, Jutras pleaded guilty to three counts of aggravated felonious sexual assault.  Jutras received the 4-20 year committed sentence to which he had agreed.  Instead of receiving two 10-20 year suspended sentences, however, Jutras received two 4-20 year suspended sentences, to run consecutively to his committed sentence and concurrently with one another.  The sentence imposed was, therefore, less severe than the sentence he agreed to on June 13, 2000, in that, if the suspended sentences were to be imposed, Jutras would serve only four years before becoming parole eligible, rather than ten.  The window during which a motion to impose the suspended sentences could be filed was ten years, running from the date of the plea.  Accordingly, if no such motion is filed before September 6, 2010, the sentencing court's ability to impose those sentences will expire.

Jutras is presently incarcerated pursuant to his committed sentence.  He was not paroled on his minimum parole date in July 2004 because he had not completed rehabilitative programming in prison, specifically, sexual offender programming, to the satisfaction of the Parole Board.

4

Facts Relating to Ineffective Assistance of Counsel Claim

Jutras alleges that his trial attorney, Dorothy Graham, lied to him and changed his notice of intention to enter a guilty plea form and his sentencing documents without his consent, thereby failing to provide him with adequate or effective representation. Jutras claims that reviewing transcripts of his original plea hearing will bear out his assertion that he was supposed to receive a sentence of 10-20 years suspended, not 4-20 years, and only on one charge, not two.  Jutras claims that Graham, in concert with court personnel, changed his sentencing documents to reflect the 4-20 year suspended sentences after his guilty plea. Jutras also claims, however, that he pleaded guilty to all three charges, knowing that the sentence would be different than what he originally agreed to, because Graham coerced him to do so. Jutras does not state how he has been harmed by receiving a lesser sentence than that to which he agreed.  Some of Jutras' assertions indicate that he believes that the 4-20 year sentences, which are concurrent to one another, could be imposed consecutively, although at times, he evinces a proper understanding of the sentence he received.  Jutras makes no

claims against Graham outside of the alleged discrepancy in his sentence.

### Facts Relating to the Prison Sexual Offender Program[3]

Jutras arrived at the prison in September 2000. In February 2001, Jutras was admitted to the Intensive Sexual Offender Program ("ISOP") for treatment. The program, ideally, lasts for eighteen months and requires inmates to complete five treatment phases in order to successfully complete the program. Jutras, as detailed below, was admitted to, and then terminated from, the ISOP program three times, without ever having been deemed to have successfully completed the program. As a result, the Parole Board has deemed Jutras to be ineligible to apply for parole, and the Department of Corrections' ("DOC") Classification Department has deemed him ineligible to advance to a lesser security status unless and until Jutras successfully completes ISOP. Jutras has tried many times to be readmitted to ISOP since receiving his

---

[3] Jutras has filed hundreds of handwritten pages in this case, which are largely repetitive, but which include a number of claims that, while they relate to Jutras' claims based on treatment at the hands of ISOP staff, are not germaine to an understanding of the issues presently before the Court on preliminary review. This Report and Recommendation will summarize the pertinent facts and claims alleged, but should not be considered to be a full reiteration of every fact presented in Jutras' complaint.

final termination, but has been deemed ineligible for readmission to the program by ISOP staff.  Jutras asserts that it therefore appears he will have to serve his maximum sentence of 20 years, unless he is allowed to complete ISOP or the Parole Board changes its position.  Jutras further alleges that he was damaged by the treatment he received in ISOP and at the prison, and by the ISOP staff's failure to allow him to successfully complete the program.

   Jutras was first admitted to ISOP in February 2001.  When he was unhappy with the methods utilized by ISOP staff, Jutras voiced that opinion.  Specifically, Jutras objected to being forced by ISOP counselor Norm Smith, and others, to admit to having had additional victims, and to having used duct tape and rope to restrain his victim during the commission of his crime of record, when he claims he did not.  Jutras objected to being forced to lie to make his crime appear worse than it was and felt that he was defamed by this forced confession.  Jutras claims that he was threatened with termination from ISOP if he failed to admit to having additional victims and to using rope and duct tape in the commission of his crime.  As a result of his objections to ISOP methodology, Jutras claims, he was terminated

from the program in February 2003 prior to completion. Jutras further claims that ISOP staff lied and falsified paperwork when they stated that his termination was based on Jutras' violation of ISOP rules.

Jutras was readmitted to the program in July 2003. In March 2004, Jutras was terminated from the program on the grounds of "Maximum Benefit Gained" ("MBG"). MBG discharge from ISOP meant that, while Jutras had done his best, he was unable to successfully complete the program at that time. Jutras also indicates that ISOP staff terminated him because he had stated in his prerelease plan that he intended to live in Hillsborough County upon his release from prison, and that his victim lived there. ISOP staff therefore determined that the prerelease plan was unacceptable. Jutras claims that by denying him the ability to live in Hillsborough County, ISOP staff would deprive Jutras of his right to parent his sons, who were not his victims, who also lived in Hillsborough County and would therefore be available there for supervised visitation.

Jutras indicates in his pleadings that the staff at ISOP felt that Jutras had unresolved mental health issues that were preventing him from being able to successfully complete the

program during his second admission to ISOP.  Once terminated, Jutras sought mental health treatment, was medicated for his mental health problems, and then sought readmission to ISOP, stating that he had been rendered able to complete treatment.

Jutras was considered for parole in May 2004, as his minimum parole eligibility date was in July 2004.  The Parole Board denied his request to be paroled, largely on the grounds that he had failed to complete ISOP.

Jutras was admitted to ISOP for a third time in January 2005.  On November 16, 2005, ISOP staff issued Jutras a "letter of warning" regarding his "pattern of distrustful and verbally aggressive behavior."  This behavior included "victim stancing," or making himself the victim in a situation, and using intimidation and verbal aggression to manipulate others.  The letter stated that Jutras also exhibited distorted thoughts about where he should be in the treatment process.

Upon Jutras' January 2005 readmission to ISOP, he was placed into a cell with an inmate whom he perceived to be a physical threat to him.  One night, Jutras awoke to find that he had ejaculated in his sleep, although he claims not to remember having a "wet dream" that night.  When Jutras opened his eyes, he

saw his cellmate moving in a manner that suggested to Jutras that he may have just gotten into bed.  Jutras surmised that it was possible that his cellmate might have fondled him.  Jutras reported this possibility to program staff and requested a cell change.  Jutras was moved to a different cell.

During a group therapy session, ISOP staff accused Jutras of violating his treatment contract, and also of jeopardizing the program of another inmate, his cellmate, by making serious allegations against his cellmate that were false or unsupported. Jutras was terminated from ISOP for a third time in January 2006. Jutras was advised by ISOP staff that this termination was final, and that he would not be eligible to reapply for admission to ISOP in the future.

Since his January 2006 termination, Jutras has made many attempts to be readmitted to ISOP, appealing to ISOP personnel, programming staff at the prison, and prison administrators.  He has been repeatedly and definitively denied access to the program.  Jutras' pleas for reconsideration have vacillated between an apologetic and conciliatory tone acknowledging his own responsibility for his terminations, and angry missives decrying the lies and mistreatment he was subjected to at the hands of

ISOP staff members.  Jutras has not received further parole or classification hearings.

Jutras petitioned the sentencing court for a reduction of his sentence to allow him to be released from prison.  Jutras based his motion on the rehabilitative work he had done at the prison, the sincerity of his desire not to reoffend, the improvements he had made in himself during his incarceration, and the assertion that he is unlikely to reoffend should he be released from prison.  Jutras' motions before the sentencing court were all denied without a hearing.  Jutras appealed the Superior Court decision to the New Hampshire Supreme Court and his appeal was declined.  Jutras appears to have raised all of the issues presently before the Court in this action in the state trial and appellate courts.

### Facts Relating to Legal Mail Claims

Jutras alleges that at some time during his incarceration his legal mail was tampered with so that prison officials could seek information about him to use against him.  Jutras claims that his legal mail was opened outside of his presence, which is against prison procedures for handling inmates' incoming legal mail, and placed into an office desk rather than forwarded to

Jutras. Jutras does not name any defendant responsible for these acts.

## Discussion

I. Statute of Limitations

Congress did not provide a statute of limitations for § 1983 actions, so federal courts must borrow the personal injury limitations period and tolling provisions of the forum state. See Wilson v. Garcia, 471 U.S. 261, 276-80 (1985); Lopez-Gonzalez v. Municipality of Comerio, 404 F.3d 548, 551 (1st Cir. 2005). In New Hampshire, all personal actions, other than slander and libel, are governed by N.H. Rev. Stat. Ann. ("RSA") 508:4(I), which provides a three-year limitations period.[4] Jutras alleges that his rights were violated by the actions of ISOP personnel taken between his first admission to ISOP in 2001 and his final termination from the program in January 2006. The limitations period in this matter, accordingly, began to run, at the latest, in January 2006, three years and three months before this suit

---

[4] Jutras asserts state law defamation claims. Under RSA 508:4(II), a state action for slander or libel must be brought within three years of the time the cause of action accrued. Even if this Court was inclined to exercise its supplemental jurisdiction over Jutras' state law defamation claim and considered it to have alleged a claim for slander or libel, the statute of limitations for such claim has run in this case.

was filed. Because this suit was not filed within the three years available to commence an action for any act occurring prior to April 2006, I recommend that all of the claims alleged, except claims related to the failure to readmit Jutras to ISOP since April 2006, or of the DOC to parole him since April 2006, be dismissed as untimely. In addition to Jutras' pre-April 2006 claims against ISOP personnel, the statute of limitations bars Jutras' claims against Graham, his trial counsel. I also, therefore, recommend that Jutras' claims against Graham be dismissed.[5]

## II. Legal Mail Claim

Jutras asserts that prison personnel opened and delayed his legal mail in an effort to gain information about him. It is unclear what information was sought, or to what end. Jutras has not indicated that he was harmed in any way by the actions alleged. Jutras has also failed to name any defendant to this

---

[5] I note that even if not barred by the statute of limitations, I would have recommended that Graham be dismissed from this action as she, as a court-appointed defense attorney, is a private actor, not a state actor, and is therefore not amenable to suit under § 1983. See Polk County v. Dodson, 454 U.S. 312, 325 (1981) (court-appointed defense attorneys are not state actors for purposes of § 1983).

claim, and I therefore recommend that it be dismissed as inadequately pleaded.

III. Denial of Rehabilitative Programming Claim

Jutras claims that, since April 2006, he has been denied access to rehabilitative programming to which he is entitled, as his parole eligibility depends on the completion of such programming, and his sentencing order requires him to participate in and successfully complete sexual offender programming.  As an initial matter, Jutras misreads his sentencing documents.  The sentencing court simply recommended to the DOC that Jutras receive sexual offender treatment.  Nothing in the language of the sentence requires Jutras to complete the programming, or mandates that it be provided.  Further, as discussed below, Jutras has no constitutional right to parole that would create a right to sexual offender programming to enable him to obtain parole.  Finally, where, as here, Jutras' admission to ISOP depends on the discretion of prison officials, he has no constitutional right to be admitted to that program, or any other rehabilitative program, during his incarceration.  See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (inmate has no constitutional entitlement to rehabilitative programming sufficient to invoke

due process when decision regarding eligibility for program is discretionary with prison officials). Accordingly, I find that Jutras cannot state a § 1983 claim for the denial of admission to ISOP since April 2006, and I recommend that any such claim be dismissed from this action.

III. Denial of Parole Claim[6]

A convicted person has no constitutional right to be conditionally released, on parole or otherwise, before the expiration of a valid sentence. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). A valid conviction, with all its procedural safeguards, extinguishes that liberty right. See id.; see also Meachum v. Fano, 427 U.S. 215, 224 (1976). A right to parole under the Due Process Clause exists only if such right is created by state law. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995); Hamm v. Latessa, 72 F.3d

---

[6] Jutras has also filed a petition for a writ of habeas corpus, alleging the improper denial of parole and requesting immediate release. See Jutras v. New Hamsphire, Civ. No. 09-152-SM (D.N.H.). On May 26, 2009, I issued a Report and Recommendation recommending that the petition be dismissed in that action. The basis for my recommendation was that Jutras had no right to parole, and that his petition seeking immediate release based on the improper denial of parole should be dismissed. Here, I reiterate the law regarding the right to parole, but address Jutras' damages claim rather than his request for immediate release.

15

947, 954-55 (1st Cir. 1995); Brooker v. Warden, No. 98-466-JD, 1999 WL 813893, at *2 (D.N.H. June 22, 1999). In New Hampshire, a convicted inmate has no state-created liberty interest in parole. See Jago v. Van Curen, 454 U.S. 14, 19-21 (1981); Ainsworth v. Risley, 244 F.3d 209, 216-17 (1st Cir. 2001); Knowles v. Warden, 140 N.H. 387, 389, 666 A.2d 972, 974-75 (1995). "In determining whether state law provides a protectable liberty interest in parole, federal courts are bound by the state's interpretation of applicable state law unless that construction or application violates federal law." Brooker, 1999 WL 813893, at *2.

Jutras seeks damages for his allegedly improper incarceration occasioned by the wrongful denial of parole. Where there is no right to parole, however, no right to damages can accrue from the denial of parole. Accordingly, I recommend dismissal of this claim.

## Conclusion

Jutras has not alleged any claim upon which relief might be granted. Accordingly, I recommend that this action be dismissed in its entirety. Any objections to this report and recommendation must be filed within ten (10) days of receipt of

this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

                                                     _____
                                                     James R. Muirhead
                                                     United States Magistrate Judge

Date:     June 8, 2009

cc:       David Emile Jutras, pro se